UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY DUN,<br><br>   Petitioner,<br><br> v.<br><br>RAYTHEL FISHER, Warden,<br><br>   Respondent. | No. 2:19-cv-01781 MCE GGH P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

  Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and Local Rule 302(c).

  Petitioner was convicted of rape, robbery and murder four decades ago; however, this is his first federal petition related to that conviction itself. It is not surprising that respondent would move to dismiss this habeas petition based on the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA") statute of limitations, and it might be expected that a motion would be successful. That expectation is realized here even though petitioner attempts to set forth an actual innocence claim. After carefully reviewing the filings, and application of the applicable law, the undersigned recommends dismissal of the pending habeas petition.

1

*Factual Background*

The court has conducted a thorough review of the record in this case, no appellate opinion has been supplied concerning the conviction itself, and Westlaw was apparently not electronically publishing unpublished decisions in the 1970s or early 1980s. Nevertheless, the facts of the case were summarized by the California Court of Appeal, Third Appellate District when it reviewed petitioner's parole suitability denial in 2010. The appellate court's summary of the facts is consistent with the court's own review of the record. Accordingly, it is provided below:

> In 1976, when he was 19 years old, petitioner Larry Dun brutally raped and murdered his friend and neighbor, Maryanne Jacobs. Petitioner was convicted of first degree murder (Pen.Code, § 187),[1] rape (former § 261. 2 [now § 261, subd. (a)(2) ] ), and robbery (§ 211) (evidentiary items taken), and sentenced to an indeterminate, unstayed term of seven years to life for the murder.
>
> ***
>
> There is no denying that petitioner's crime was especially callous and shockingly vicious. He brutally raped and murdered his neighbor, Jacobs, someone he considered a friend.
>
> The horror unfolded as follows. Petitioner had gone to Jacobs's home to get information about a contractor. He carried a knife with him, as he had done for some time "for protection." He also noticed a knife in Jacobs's kitchen while they were talking. He picked up that knife, noticed her fear, and then told her to sit down and be quiet. He got some rope, tied up her wrists, and raped her. When she tried to sit up, he stabbed her. Not wanting to get caught, he then killed her.
>
> The autopsy disclosed at least 18 stab wounds to Jacobs's neck, back, chest and abdomen; seven of which penetrated deep organs; and three of which were incised (one in the front of the neck all the way to the backbone; the second across the eyes and bridge of the nose, cutting into an eyeball; and the third on the back of the neck, severing the airway and aorta). Bloodstains were spattered throughout the bedroom walls, furnishings, and bathrooms. Finally, Jacobs had two fractured ribs, and a skull fracture from blunt force to the front and back of her head.
>
> Shortly after the offense, with evidence against him mounting, petitioner told his parents what he had done. They drove him to the police station where he confessed.

<u>In re Dun</u>, No. C062163, 2010 WL 2186036, at *1, 3 (Cal. App. June 2, 2010).

---

[1] [Fn.1 in original text] Undesignated statutory references are to the Penal Code.

2

*Procedural Background*

Given the age of this case, the details of petitioner's trial and conviction are somewhat murky. Suffice it to say here, that judgment against petitioner for first degree murder, robbery and rape were first entered on March 31, 1977. ECF No. 10-1 at 1-3. Pertinent to petitioner's claim of actual innocence based on insanity, the trial proceeding involved a claim of insanity, but unlike the petition here, what records which are available indicate that the defense was not based on drug use—just a general, underlying mental illness. ECF No. 1 at 30-34. More of this will be discussed below. The jury found petitioner to be sane as well as guilty. ECF No. 10-1 at 3-4.

As set forth above, the age of the case precludes this court from specifically describing any direct appeal of petitioner's conviction, but an appeal was taken. The convictions were affirmed, but the initial sanity findings were reversed and sent back for retrial. ECF No. 1 at 123-124. A court trial was held on the renewed sanity hearings, and again, petitioner was found sane, ECF No. 1 at 65-70, and again, it does not appear that drug use was an aspect of the defense. Petitioner was resentenced in February of 1981. ECF No. 10-1 at 4-8.

It is unknown whether petitioner actually appealed this latter sanity finding, and thus, while the precise date of the conviction finality for AEDPA purposes is unknown, presumably, it expired in the 1980s. Petitioner does not take issue with this.[2] None of these dates makes much difference because the one year AEDPA limitations statute, 28 U.S.C. § 2244(d), was not effective until April 25, 1996—a date when certainly all appellate proceedings were expired. Moreover, the fact that a habeas petition was filed in the California Supreme Court in 1997, see below, would indicate that all appeals had been exhausted. Because the finality of the conviction occurred prior to the effective date of AEDPA, the commencement date for the AEDPA limitations was one day after the enactment of AEDPA, Patterson v. Stewart, 251 F.3 1243, 1246 (9th Cir. 2001), i.e., April 25, 1996, and absent tolling, would expire on April 25, 1997.

Petitioner did seek habeas review before the California Supreme Court in 1997, 11/26/97-6/24/1998, and given the legal limitations commencement date, the AEDPA limitations period

---

[2] Petitioner does not contend that any of the other limitations trigger dates apply to his case. See 28 U.S.C. § 2241.

would not have been statutorily tolled, as the commencement of the state habeas petitions post-date the expiration of the limitations period.[3]

Of some limited consequence here, petitioner was denied parole suitability in November of 2008, but this denial was overturned by the California Court of Appeal. In re Dun, supra. The Parole Board subsequently found petitioner suitable for parole. Because the parole suitability case did not attack the conviction itself, it is of no legal consequence to the limitations analysis before this court. However, as set forth below, the factual discussion of the Court of Appeal affects petitioner's present allegations of actual innocence. To complete the procedural discussion here, however, petitioner's suitability for parole finding was short lived as the Governor at the time reversed the Board's decision finding suitability. A habeas proceeded on this reversal, but neither the Court of Appeal, nor the California Supreme Court found the habeas petition meritorious. See In re Larry Dun, 2012 WL 934725 (Cal. Supreme Court habeas petition); S200229 (Cal. Supreme Court case docket denying the petition).

The parties do not relate that any other habeas petitions were filed within the state system germane to the conviction itself until 2019. ECF Nos. 10-3, 10-4, 10-5.

*The Instant Federal Petition*

The federal petition at bar was filed on September 9, 2019. ECF No. 1. Petitioner claims that his 1997 conviction should be invalidated for the following reasons; (Claim 1) his due process rights were violated as he was under the influence of PCP at the time the crimes for robbery, rape and murder were committed thereby demonstrating that he was legally insane; (Claim 2) vindictive and selective prosecution; (Claim 3) factual innocence of claims because the parole commissioners erred in the denial of his parole; and (Claim 4) "due diligence by extraordinary circumstances with new laws new found evidence in records." Petitioner invites the court to peruse a plethora of exhibits to make sense of his present petition. This is a difficult task. The only consistent theme in the petition and exhibits is that petitioner now claims he is actually innocent because he was legally insane at the time of the commission of his crimes as he had ingested PCP, which made him unaware of his actions in committing the crime.

---

[3] The contents/claims of that habeas petition are unknown.

4

*Discussion*

Clearly, without consideration of the actual innocence claim in the petition, the petition is untimely by any calculation. The one year period, counting tolling, expired on April 25, 1997. Petitioner's parole proceedings expired, at the latest, in 2012. No further state petitions (regarding the conviction itself or the parole proceedings) were filed until 2019. The federal petition was filed in 2019. Therefore, with the exception of an actual innocence claim, discussed below, whatever petitioner's claims, such are untimely. This is true even if one or more of petitioner's claims involve suitability of parole issues, and not the conviction itself.

Normally, due to the incoherence of the petition and its specific claims, the undersigned would order an amended petition to be filed with respect to an actual innocence claim. However, as seen below, such an amendment would be futile.

Actual Innocence

The legal backdrop for avoiding the AEDPA limitations bar on account of actual innocence is well stated in Dean v. Callahan, No. 1:18-cv-01577-SKO (HC), 2018 WL 6111012, at *2-3 (E.D. Cal. Nov. 21, 2018):

> In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence" can be an exception to the one-year limitations period:
>
>> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, ..., or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup* [*v. Delo*], 513 U.S. [298,] 329 [ (1995) ]; *see House* [*v. Bell*], 547 U.S. [518,] 538 [ (2006) ] (emphasizing that *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332.
>
> 569 U.S. 383, 386 (2013).
>
> However, the "actual innocence gateway," may only be employed when a petitioner "falls within the 'narrow class of cases ...

5

implicating a fundamental miscarriage of justice.' " *Schlup*, 513 U.S. at 314-15 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). A petitioner must demonstrate factual innocence and "not mere legal insufficiency." *Bousely v. United States,* 523 U.S. 614, 623 (1998). Consequently,

> [t]o be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."

*Schlup*, 513 U.S. at 324. Further, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327.

Case after case requires a factual showing of actual innocence, not just a claim of error with the afterwards conclusion that such error involved fundamental fairness.

> The required evidence must create a colorable claim of actual innocence, that the petitioner "is innocent of the charge for which he [is] incarcerated," as opposed to legal innocence as a result of legal error. [*Schlup v. Delo,* 513 U.S.] at 321, 115 S.Ct. 851 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 452, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)); *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

Ganderla v. Johnson, 286 F.3d 1080, 1085 (9th Cir. 2002). See also Marrero v. Ives, 682 F.3d 1190, 1193 (9th Cir. 2012).

The undersigned presumes that when a petitioner makes a claim that he was insane at the time of crime commission, such is a claim that would implicate actual innocence.

> In the context of an affirmative defense on which the defendant has the burden of proof by a preponderance of the evidence, the burden is articulated differently: the petitioner "must prove that it is more likely than not that no reasonable juror would have found that he failed to establish any of the .... elements of the affirmative defense by a preponderance of the evidence." *Smith v. Baldwin,* 510 F.3d 1127, 1140 n. 9 (9th Cir.2007) (en banc), *cert. denied*, 555 U.S. 830, 129 S.Ct. 37, 172 L.Ed.2d 49 (2008). Martin contends he passes through the actual innocence gateway because of his insanity. To prevail on an insanity defense under California law, Martin (1) would have the burden of proof to show insanity, (2) would have to prove insanity by a preponderance of the evidence, and (3) would prevail only with a unanimous verdict. [Footnote 5 omitted] Under the *Smith* standard, Martin would have to "prove that it is more likely than not that no reasonable juror would have found that he failed to establish" the elements of insanity "by a preponderance of the evidence. *Smith*, 510 F.3d at 1140.

Martin v. Virga, No. C-12-1351 EMC PR, 2012 WL 6680158, at *8 (N.D. Cal. Dec. 21,

6

2012).

California law regarding drug usage as "insanity" requires explication here. People v. James, 189 Cal. Rptr. 3d 635 (2015), is a fairly recent case which took a look at both drug usage insanity and a defense of "unconsciousness" due to drug usage differentiated between the two. A portion of the opinion is provided below:

> After Dr. Griffith's testimony concluded, the court delivered four jury instructions to the panel, including CALCRIM No. 3450. The instruction included the following admonitions:
>
> "The defendant was legally insane if:
>
> "1. When (he/she) committed the crime[s], (he/she) had a mental disease or defect;
>
> "AND
>
> "2. Because of that disease or defect, he was incapable of knowing(he/she) did not know or understand the nature and quality of (his/her) act or did not know or understand that (his/her) act was morally or legally wrong.
>
> "None of the following qualify as a mental disease or defect for purposes of an insanity defense: personality disorder, adjustment disorder, seizure disorder, or an abnormality of personality or character made apparent only by a series of criminal or antisocial acts.
>
> "Special rules apply to an insanity defense involving drugs or alcohol. Addiction to or abuse of drugs or intoxicants, by itself, does not qualify as legal insanity. This is true even if the intoxicants cause organic brain damage or a settled mental disease or defect that lasts after the immediate effects of the intoxicants have worn off. *Likewise, a temporary mental condition caused by the recent use of drugs or intoxicants is not legal insanity.*
>
> "If the defendant suffered from a settled mental disease or defect caused by the long-term use of drugs or intoxicants, that settled mental disease or defect combined with another mental disease or defect may qualify as legal insanity. A settled mental disease or defect is one that remains after the effect of the drugs or intoxicants has worn off."

People v. James, 189 Cal. Rptr. 3d at 641-642 (emphasis added).

James did not find that CALCRIM 3450 inaccurately stated California law, nor is the undersigned aware of cases which have rejected it. Petitioner has produced no evidence that his drug usage caused a mental defect, which when combined with another mental defect, made him

7

insane; nor does he contend such.  He merely opines that drug usage itself made him unaware of what he was doing at the time of the murder.  Petitioner would not qualify for an actual innocence insanity defense based simply on drug intoxication on the day of the crimes because such is not recognized by California law.

However, James recognized that drug usage might have allowed petitioner to claim "unconsciousness" by virtue of drug intoxication—but—such would only be a *partial* defense to the prosecution's overall duty to prove all elements of the crime beyond a reasonable doubt, and would not qualify as actual innocence:

> " 'If the state of unconsciousness is caused by voluntary intoxication, however, it is not a complete defense.' [Citation.]" (*People v. Kelly* (1973) 10 Cal.3d 565, 573, 111 Cal.Rptr. 171, 516 P.2d 875 (*Kelly* ), quoting *People v. Conley* (1966) 64 Cal.2d 310, 323, 49 Cal.Rptr. 815, 411 P.2d 911.) It can negate specific intent, but is no defense to a general intent crime. (*Ibid*.) "[C]riminal responsibility in a general intent crime is justified where a defendant is voluntarily intoxicated to the point of unconsciousness even though there was no actual intent to commit a crime because a defendant may not avoid the criminal harm caused by his or her failure to act 'with reason and conscience.' " (*People v. Mathson* (2012) 210 Cal.App.4th 1297, 1326, 149 Cal.Rptr.3d 167, quoting *People v. Velez* (1985) 175 Cal.App.3d 785, 794, 221 Cal.Rptr. 631 (*Velez* ).)
>
> Therefore, if the evidence raises a reasonable doubt that the defendant was conscious at the time of the alleged criminal conduct, unconsciousness is a complete defense to both general and specific intent crimes. However, if the jury finds the unconsciousness was the result of voluntary intoxication, then unconsciousness is a defense only to specific intent crimes.
>
> ***
>
> Second, this testimony [of non drug induced unconsciousness] was directed at the issues of specific intent and consciousness, rather than sanity. Appellant was charged with aggravated mayhem which required the prosecution to prove a specific intent to cause a permanent disability or disfigurement. (§ 205; *People v. Assad* (2010) 189 Cal.App.4th 187, 116 Cal.Rptr.3d 699 [evidence of an indiscriminate attack is not sufficient for aggravated mayhem].) While the trial court rejected appellant's defense of unconsciousness, the psychological testimony was admitted on the issue of whether appellant could form the specific intent required for aggravated mayhem. The court instructed the jury that the evidence appellant suffered from a mental disease, defect or disorder could only be considered for the "limited purpose" of "deciding whether the defendant acted with the specific intent

> required for the crime of aggravated mayhem." It may be true that Dr. Griffith's testimony supported a finding of insanity, but at the guilt phase, it was not admitted to prove insanity. (*See People v. Hernandez* (2000) 22 Cal.4th 512, 520, 93 Cal.Rptr.2d 509, 994 P.2d 354 ["Although guilt and sanity are separate issues, the evidence as to each may be overlapping. Thus, at the guilt phase, a defendant may present evidence to show that he or she lacked the mental state required to commit the charged crime. [Citations.] A finding of such mental state does not foreclose a finding of insanity."].)
>
> We disagree with respondent's characterization that the admission of Dr. Griffith's testimony during the guilt phase improperly gave appellant "two bites at the proverbial apple." Not only was there a failure to object when that *812 testimony was proffered, but even under the trial court's unjustifiably restrictive view of the defense of unconsciousness, the evidence was appropriately admitted to disprove the specific intent for aggravated mayhem.
>
> ***
>
> Thus, as we have noted earlier in this opinion, unconsciousness caused by voluntary intoxication provides no defense to a general intent crime. (*Kelly*, *supra*, 10 Cal.3d at p. 573, 111 Cal.Rptr. 171, 516 P.2d 875.) It is only a partial defense to a criminal charge—that is, it may serve to negate specific intent. (*Ibid*.)

James, supra, 189 Cal. Rptr. 3d at 642, 648, 649.

The undersigned finds that given petitioner's allegations here, he theoretically might have been eligible for a partial defense to the prosecution's burden to establish specific intent. A reduction of a crime to a lesser offense does *not* qualify as factual, actual innocence. See Rozzelle v. Sec'y, Florida Dep't of Corr., 672 F.3d 1000, 1015 (11th Cir. 2012) ("we decide only that the narrow and extraordinary nature of Schlup's actual innocence 'gateway' does not extend to petitioners...who did the killing and whose alleged 'actual innocence' of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide."); Pierce v. Trimble, No. 2:12-cv-0506 GGH P, 2013 WL 5708668 (E.D. Cal. Oct. 15, 2013). The undersigned takes the Supreme Court at its word—actual innocence requires a factual innocence, and not simply insufficiency of the evidence, or some other ordinary habeas claim, be it called "due process error" or "partial affirmative defense," wrapped in an actual innocence label.

////

////

9

But even if the undersigned were in error in the above discussion, and petitioner might have qualified for actual innocence with appropriate "partial defense" allegations,[4] such would fail here. Petitioner here cannot meet the standard for establishing an actual innocence, nor with the showing set forth, is petitioner entitled to an evidentiary hearing. First, although delay in and of itself in making the actual innocence claims is not dispositive, it is a factor in the analysis. McQuiggin v. Perkins, 569 U.S. 383, 399 (2013). Petitioner's decades long delay in asserting a PCP drug induced unconsciousness defense casts great doubt on the credibility of his claim herein. More importantly, petitioner did contest his sanity at his trial in the 1970s, but not on the drug usage grounds indicated here. His latter day assertions of a new ground for insanity lacks credibility.

But perhaps the most compelling evidence of the lack of actual innocence is that petitioner himself long ago disclaimed PCP drug usage on the day of his crimes. "I think I went out on the front porch and smoked marijuana and that it was Wojacin. I didn't usually smoke this kind of marijuana." ECF No. 1, at 22 (Petitioner's Statement to the Probation Officer). "The defendant recalled using PCP *on one occasion,* while a sophomore in high school, on an experimental basis." Id. at 28 (emphasis added). Petitioner did not relate at any time to the probation officer that he was so intoxicated by the use of PCP, or any other drug, that he could not recall the day in question. Although petitioner's lengthy description of his somewhat dazed, mindless mindset on the day of the crimes could be found consistent with drug intoxication, ECF No. 1 at 22-25, his credibility on such was concurrently suspect, i.e., the probation officer noted that petitioner had also previously attributed the crimes to jealousy, id. at 25, and that petitioner's "statements were at times inconsistent with previous statements made to police officers and psychiatrists. It appears

---

[4] In California, rape is a general intent crime. People v. Linwood, 129 Cal. Rptr. 2d 73, 81 (2003). Thus, drug induced "unconsciousness" cannot qualify even as a partial defense. Robbery does require the specific intent to deprive the victim of the stolen property permanently, People v. Huggins, 38 Cal. 4th 175, 214 (2006). Absent a felony murder prosecution, murder in the first degree requires a specific intent to kill; however, if the murder prosecution is predicated upon felony murder, a specific intent to commit the underlying felony is usually required. See People v. Jones, 29 Cal. 4th 1229, 1256-57 (2003).

Petitioner was convicted of first degree murder, rape and robbery. ECF No. 1 at 21. However, the precise theory of the prosecution is not available to the undersigned. For the purpose of simplicity in this alternative discussion, all of petitioner's convictions will be assumed to have a specific intent requirement which could be lessened to a subsidiary general intent crime.

that the [petitioner] would frequently offer information that he felt would place him in the most favorable light or which he felt the interviewer expected to hear. To this extent, the defendant appears to be very calculating in his thoughts. Additionally, though he appeared lucid, at times, the [petitioner] would deny activities that he previously admitted, and then later recall his involvement in these same activities." Id. at 27. Nor did any of the descriptions of petitioner's psychiatric examinations contained in the probation report reveal any description by petitioner that he was under any significant influence of drugs at the time the crimes were committed. The two sanity hearings petitioner received during his initial trial proceedings and on remand did not involve drug intoxication as a reason for the claimed insanity. See also ECF No. 1 at 95 (the Superior Court order denying petitioner's 2019 state habeas petition, finding the contention that petitioner was under the influence of PCP during the crime commission to be false).

Petitioner did not contend to the 2008 Parole Board, as set forth by the Court of Appeal, that he was acting unconsciously from PCP (or other drug) ingestion, or near to that state, at the time of the crimes' commission. Rather, he specifically recalled that the cause for his violent actions was emotional upset from years of racially tinged bullying which boiled over, and caused him to commit the crimes. In re Dun, supra, 2010 WL 2186036. Petitioner argued in 2008 that he had obtained much insight as to the reason why the crimes were committed—and none of that had to do with PCP (or other drug) intoxication. Id.

Put simply, when reviewing the record as a whole, petitioner has failed to offer evidence, which if believed, might lead to the conclusion that the crimes were committed by a person so intoxicated, he had lost the ability to understand/control his actions.

Nor is petitioner entitled to an evidentiary hearing for assessing whether actual innocence negates the AEDPA limitations statute on his most recent claim so well contradicted by the record in this case.

> A district court's decision to grant an evidentiary hearing to review the factual basis of an equitable tolling argument is reviewed for abuse of discretion. *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

\*\*\*

> Orthel contends that two other decisions from our court establish a rule that a petitioner is entitled as a matter of law to an evidentiary hearing upon making a prima facie showing that would, if true, entitle him to equitable tolling. *See Roy v. Lampert*, 465 F.3d 964 (9th Cir. 2006); *Laws v. Lamarque,* 351 F.3d 919 (9th Cir. 2003). [Footnote 4 omitted]. Not so. *Laws* and *Roy* provide a more nuanced rule that further factual development may be required when a petitioner makes a good-faith allegation that tolling is warranted, depending on the sufficiency of the record that was before the district court. The two cases contain seemingly broad mandatory language, but their holdings and reasoning are fact-bound.
>
> Accordingly, we stated in *Roy* that a "habeas petitioner like Roy ... should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling,' " 465 F.3d at 969 (quoting *Laws,* 351 F.3d at 919), but justified the disposition based on the record's conflicting affidavits, *id.* at 975. Similarly, in *Laws* we granted remand for further factual development "because Laws has made a good-faith allegation that would, if true, entitle him to equitable tolling," but narrowly justified the decision on the basis that the "record in this case is patently inadequate ... to allow us or any other court to evaluate the strength of Laws's claim." 351 F.3d at 921, 924. In both cases, the operative language discusses a particular petitioner (rather than stating broad rules applying to all courts and all petitioners) and then elaborates the fact-specific rationale for the disposition.

Orthel v. Yates, 795 F.3d 935, 939-40 (9th Cir. 2015).[5]

Exercising discretion here, the undersigned finds that petitioner's decades late claim and the entire record itself negates any possible finding that the present PCP allegation is made in good faith. The long standing record conflicts with such a claim such that it should not be rewarded with an evidentiary hearing.

*Certificate of Appealability*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

---

[5] There is no reason to believe that the evidentiary hearing standard for equitable tolling should not be applied to cases involving actual innocence claims.

*Motion for Appointment of Counsel*

In addition, petitioner has requested the appointment of counsel. ECF No. 11. There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. In the present case, the court does not find that the interests of justice would be served by the appointment of counsel at the present time.

*Conclusion*

In accordance with the above, IT IS HEREBY ORDERED that Petitioner's motion for appointment of counsel (ECF No. 11) is denied.

Further, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be dismissed based on timeliness; and

2. This court decline to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 31, 2019

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE